| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Janice Abrams, *et al.*, | § § | |
| Plaintiffs, | § § | |
| *versus* | § § | Civil Action H-11-213 |
| State Farm Lloyds, | § § | |
| Defendant. | § § | |

# Opinion on Summary Judgment

1. *Introduction.*

   Three homeowners dispute their insurance carrier's assessment of the damage Hurricane Ike caused to their houses.

2. *Hurricane Ike.*

   Steven and Shannon Graves and Janice Abrams own houses in Houston that Hurricane Ike damaged on September 13, 2008. When the hurricane struck, State Farm Lloyds insured both houses.

   Abrams called Lloyds on September 24, 2008, to report the damage. Lloyds sent an inspector on November 5, and it sent a second inspection team specializing in two-story homes on November 16. The next day, Lloyds called Abrams. It told her that the damage did not exceed her deductible, and it closed her claim. Abrams called Lloyds on December 3, saying that three contractors had estimated her repair cost to be greater than her deductible. Lloyds asked her to forward it the estimates; she never did. Abrams did not contact Lloyds again until she sued on December 1, 2010.

   Mr. Graves called Lloyds on October 2, 2008, to report the damage to his house. Lloyds told him that the damage he described was less than his policy's deductible, and Mr. Graves withdrew his claim. In March of 2009, Mr. Graves received repair estimates that were greater than his deductible.

The Graveses and Abrams sued Lloyds on December 1, 2010. They say that Lloyds violated the Texas Insurance Code and Texas Deceptive Trade Practice Act, delayed payment, committed fraud, breached its insurance policy, and breached the common law duty of good faith and fair dealing. Lloyds has moved for summary judgment.

3. *Statutes.*

Suits under Chapter 541 of the Texas Insurance Code must be filed within two years of the cause of action. Suits under the Texas Deceptive Trade Practices Act must be filed within two years of the cause of action or within two years after the consumer should have discovered a deceptive act. The cause of action is the real-world event that predicates the legal claim – not the legal theory applied to it.

Lloyds says that both claims are barred by limitations. Hurricane Ike damaged the houses on September 13, 2008. Lloyds closed the Graveses' claim on October 2 and Abrams's claim on November 17. They sued on December 1, 2010 – more than 24 months later.

Abrams says that her cause of action accrued when she received the repair estimates on December 3, 2008 – although those estimates have still not been shown. By law, Abrams has two years after an event that may cause a potential claim to investigate, study, appraise, hire counsel, and sue. She had 21 months left when she was told by multiple people – adjuster, lawyer, contractor – that she had damages exceeding her deductible. She did nothing.

The Graveses say that their cause of action accrued when they received the repair estimates greater than their deductible in March of 2009. Like Abrams, their potential claim arose when their house was damaged from a cause covered by the policy.

At the latest, the cause of action for both parties was when Lloyds closed their claims.[1] By November 17, 2008, both claims had been closed. Because the owners did not sue within 24 months, their claims are foreclosed.

4. *Limitations.*

Abrams and the Graveses say that payment has been delayed. They say that Lloyds owes them money for the repair estimates that they personally gathered after Lloyds closed their claims. Their logic is: Lloyds is late in paying claims that we never submitted to it. The owners did not file a proof of loss with the data required by the policy. Knowing that their

---

[1] *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex. 1990).

claims had been closed in October and November of 2008, they did not present their amended claims within two years. When Lloyds told Abrams to send it the data that she now relies on, she did not. Lloyds could not have responded to information that it never received.

Abrams and the Graveses filed their claims by telephone, and Lloyds responded by telephone that their claims had been closed – Graves on October 2, 2008, and Abrams on November 17.

After an insured makes a claim, the Texas Insurance Code requires insurance carriers to act by specific deadlines. A lawsuit saying these requirements were violated must be made within two years of the violation. Because this claim is late, it is barred.

5. *Evidence.*

Lloyds objects to parts of Janice Abrams's and Steven Graves's affidavits and to the repair estimates that they received on their own. Material parts of both affidavits are hearsay. They simply recite what people told them about things. Paragraphs three and six of Abram's affidavit are struck. Paragraph three of Graves's affidavit is struck as being almost fifth level hearsay and irrelevant. Even if Lloyds mistreated every other policy holder, that says nothing about this case.

The repair estimates are evidence of what John Duncan might have charged to repair the houses on January 27, 2011. He attempts no articulation, however, of the link between the hurricane and the repairs he estimated. The estimates do not differentiate between (a) damage that existed before September 13, 2008, (b) damage caused by the hurricane, and (c) damage occurring during the twenty-eight months between the hurricane and the inspections. Even if there was a distinction, Duncan has no explanation for how he knows what caused the damage and when. His estimate for Abrams was also so thorough that it takes her roof off twice but never puts it back on.[2]

The estimates are not sworn, not probative, not reliable, and nothing but hearsay.

Because the owners have a duty to mitigate their losses, Duncan would also have to eliminate the value of the exacerbation of the damage by the owners' not having promptly repaired their houses.

---

[2] Pl.'s Resp. to Def.'s Mot. Summ. J., exhibit 14 2.

6.  *Breach.*

Abrams and the Graveses also say that Lloyds breached their insurance policies by not fully valuing the damage to their houses. This expresses only their dissatisfaction with Lloyds's assessment. After Lloyds closed their claims, the owners had two years to sue. Insurance contracts are distinct under Texas's regulatory scheme, and claims of breach are governed by specific rules. The claims are too late.

7.  *Fraud.*

Fraud happens when a party knowingly makes a false representation of material fact that another party reasonably relies on to its detriment. Abrams and the Graveses say that the fraud occurred when they received repair estimates that were higher than their deductibles. Lloyds relied on the Graveses' description to estimate that the value of the damage to their house was below their policy deductible. Lloyds visited Abrams's house twice, furnished her its estimates, and closed the claim. The claimants say that because they now have different estimates, Lloyds must have cheated them.

The valuations used by both sides are *estimates*. The administration of insurance claims is called an *adjustment*. Variation in approximations is natural – not fraudulent. Additional information and discussion may affect the eventual valuation by the carrier. Administering insurance claims is not a binary choice between justice and fraud.

Neither claimant relied on Lloyds's estimate. Although they claim to have relied on the "fact" of Lloyds's estimate when they chose to investigate the damage on their own, they never sent the difference between the estimates to Lloyds for an adjustment.

This is not evidence of fraud. It is evidence only of Abrams's and the Graveses' delinquent attention to their business and late, lawyer-induced "dissatisfaction" with Lloyds's assessment of the damage.

8.  *Faith & Dealing.*

The owners' only evidence to support this legal theory is that they are now unhappy with the original estimates. An injury requires a factual basis. Wanting more money is not an injury. Lloyds promptly responded to their claims. It could not have responded in good faith – or in any other faith – to claims that were not pursued.

9.  *Proof of Loss.*

A condition precedent to insurance suits is that the owners submit a sworn proof of claim. It appears that Abrams and the Graveses have never done that.

10. *Conclusion.*

Janice Abrams and Steven and Shannon Graves dispute the valuation of the damage Hurricane Ike caused to their houses. They say Lloyds did everything wrong – paid late, breached contracts, deceived consumers, and committed fraud. They are wrong.

The legal theories in their complaint are either late or unsupported by a shadow of a fact. They will recover nothing from Lloyds.

Signed on December 10, 2011, at Houston, Texas.

Lynn N. Hughes
United States District Judge